UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| KAREN READING, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19 CV 2 DDN |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Karen Reading for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff Karen Reading was born on July 16, 1964, and filed her application for benefits on January 28, 2016.[2] (Tr. 88, 197.) Plaintiff alleged a disability onset date of July 1, 2012,[3] for fibromyalgia, degenerative joint disease, transitional vertebrae with pseudoarthrosis, depression and anxiety, carpal tunnel syndrome, peripheral vascular disease, sacroiliac dysfunction and joint inflammation, osteopenia, scoliosis, and insomnia. (Tr. 233.) Her application was initially denied

---

[1] The Hon. Andrew M. Saul is now the Commissioner of Social Security. He is therefore substituted as the defendant in this case in his official capacity. Fed. R. Civ. P. 25(d). No further action needs to be taken to continue this action. 42 U.S.C. § 405(g) (last sentence).

[2] For her Title II claim, the date she was last insured was December 31, 2016. (Tr. 13.)

[3] Plaintiff's alleged onset date was originally September 1, 2011; but it was later amended to July 1, 2012. (Tr. 223.)

by a disability examiner on June 27, 2016. (Tr. 11.) Plaintiff appealed the decision and requested a hearing by an administrative law judge ("ALJ"). (Tr. 11, 100, 142.)

On March 7, 2018, plaintiff appeared before an ALJ. (Tr. 47.) She and a vocational expert testified at the hearing. (Tr. 22, 70-73.) On August 7, 2018, the ALJ denied plaintiff's application. (Tr. 8.) On December 14, 2018, the Appeals Council denied plaintiff's request for review (Tr. 1-7) and the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.984(b)(2). The case is now before this Court for review.

## MEDICAL HISTORY

The Court adopts the parties' statements of uncontroverted material facts (Docs. 17-1, 20-1.) These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court discusses specific facts as they are relevant to the parties' arguments.

## DECISION OF THE ALJ

At Step One, the ALJ found that plaintiff met the insured status requirements and had not engaged in substantial gainful activity during the period from her alleged disability onset date of July 1, 2012, through the date she was last insured, December 31, 2016. (Tr. 13.) At Step Two, the ALJ found the following. Through the last date of insured status, plaintiff had the following medically determinable impairments: degenerative disc disease, scoliosis, osteoarthrosis, fibromyalgia, carpal tunnel syndrome, and depression and anxiety with agoraphobia. (Tr. 13.) The ALJ also found that these impairments, considered singly and in combination, constituted more than slight abnormalities and had more than a minimal effect on plaintiff's ability to perform basic work activities for twelve consecutive months. 20 C.F.R. § 404.1520(c); (Tr. 13-14.) The ALJ also found that all other alleged impairments were not severe, because they had no more than a minimal effect on plaintiff's ability to work or were not expected to last beyond twelve months or result in death. (Tr. 14.)

At Step Three, the ALJ noted that plaintiff did not have an impairment, or combination of impairments, that met one of the listed impairments ("the Listings") in 20 C.F.R. § 404, Subpart P, Appendix 1. Since the plaintiff's impairments did not meet the requirements of the Listings, the ALJ then determined the plaintiff's residual functional capacity ("RFC"). The ALJ determined

plaintiff had an RFC to perform "light work" as defined by 20 C.F.R. 404.1567(b) with the following limitations: (1) plaintiff could only occasionally climb ramps or stairs but never climb ladders ropes or scaffolds; (2) plaintiff could only occasionally balance, stoop, kneel, crouch, and crawl; (3) she could frequently handle and finger (4) she would need to avoid hazards such as dangerous machinery and unprotected heights; and (5) she could perform simple and routine tasks throughout the workday in an occupation that did not require her to communicate with the general public on behalf of the employer. (Tr. 16.)

At Step Four, the ALJ found that plaintiff was unable to perform her past relevant work as an office support assistant with the Department of Corrections. (Tr. 21, 235.) However, based on plaintiff's age, education, work experience, and RFC, the ALJ concluded at Step Five that plaintiff was capable of performing other jobs existing in significant numbers in the national economy, such as housekeeping cleaner, router, and marker. (Tr. 21-22.) In accordance with 20 C.F.R. § 404.1520(g), the ALJ concluded the plaintiff was not disabled at any time from July 1, 2012 (alleged onset date) through December 31, 2016 (date last insured). (Tr. 23.)

## GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). As long as substantial evidence supports the decision, the Commissioner may not be reversed merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to benefits, a claimant must prove she is unable to perform any substantial gainful activity in the national economy due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-

step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing the five-step process); *Pates-Fires*, 564 F.3d at 942.

## DISCUSSION

The only substantial issue before the Court is whether or not the plaintiff was disabled between July 1, 2012, the onset date, and December 31, 2016, the date last insured. (Doc. 17 at 3.) Specifically, plaintiff alleges only that the ALJ's finding that her *mental* RFC was not based on substantial evidence. (Doc. 17 at 5.)

### Residual Functional Capability

RFC is the most a claimant can do despite both her mental and physical limitations, that is, the degree in which the plaintiff's symptoms affect her ability to work. 20 C.F.R. § 404.1545(a).

Plaintiff argues the ALJ failed to properly assess her limitations concerning problems leaving her house and going in public by herself due to anxiety with agoraphobia. (Doc. 17 at 5.)

### A.     Treatment Record

The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of her limitations. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). However, a "claimant's residual functional capacity is a medical question[;]" therefore, "[s]ome medical evidence," must support the determination of the claimant's RFC. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000)).

Plaintiff refers to medical treatment notes and letters generated between July 1, 2015 and February 8, 2018. (Doc. 17 at 5-8.) Defendant argues that the medical evidence during the relevant period, from July 1, 2012 through December 31, 2016, does not support plaintiff's position. Plaintiff notes she began treatment for anxiety with her primary care physician Aaron M. Trone, DO, on July 1, 2015. (Tr. 414, 438.) Dr. Trone noted that plaintiff reported problems with public places and other phobic behaviors, such as eating at a buffet. (*Id*. at 439.) Dr. Trone also noted anxiety during subsequent examinations on December 22, 2015; January 18, 2016; and March 31, 2016. (Tr. 520, 695, 699.) In addition, on exertion, at the State Fair on September 9, 2016, plaintiff

was seen in the ER due to shortness of breath; further, on October 10, 2016, she was seen at East Central Missouri Behavioral Health Services for further assessment. (Tr. 843-46.) On October 12, 2016, near the end of the relevant period, plaintiff was first seen by Nurse Practitioner Catherine J. Browning, PMHNP, for medication for her anxiety. (Tr. 758-66.) There are additional treatment records in 2017, 2018, and a letter from nurse practitioner Browning in 2018, notably after the date she was last insured.

The ALJ noted that plaintiff had a history of anxiety; however, during October 2013 plaintiff reported to her primary care physician that Wellbutrin was helping, and by January 2014 plaintiff reported she was sleeping better, and treatment notes reported a normal mood and affect. (Tr. 18-19.) Treatment notes in February 2014, November 2014, and April 2015 also indicate normal mood and affect. (Tr. 413, 447, 451, 455.) In March 2015 and July 2016 she reported she was doing well, and treatment notes reported a normal mood and affect. (Tr. 702.) Although plaintiff was seen in the ER for shortness of breath on September 9, 2016, with a follow-up in October 2016, and although she continued to seek treatment for anxiety in October 2016, the physician indicated that the high blood pressure and abnormal EKG, after her exertion at the Fair, "wasn't anything major." (Tr. 758.) Treatment notes from plaintiff's October 2016 visit to Nurse Practitioner Browning indicate plaintiff wore a heart monitor to rule out possible cardiology problems causing her chest pain and shortness of breath and physical causes of anxiety. Further, plaintiff reported believing her symptoms were associated with anxiety. (Tr. 773.) In the treatment notes, Nurse Practitioner Browning reported plaintiff was seeking medication for anxiety but that plaintiff was also reluctant to receive recommended beneficial individual therapy. (*Id*.) The record does not show that plaintiff sought therapy treatment until approximately a year later in July, August, and December 2017. (Tr. 737, 743, 745.) By November 2016 the treatment notes indicated a normal mood and affect. (Tr. 710.) The ALJ noted that due to plaintiff's shortness of breath at the Fair in 2016, plaintiff was diagnosed with tachycardia which improved with medication. At a follow-up visit in 2017 plaintiff reported she had no chest pain, no shortness of breath, and no palpations. Thus, the ALJ found the condition non-severe. (Tr. 14.)

"If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Astrue*, 611 F. 3d 941, 955 (8th Cir. 2010) (quoting *Brace v. Astrue,* 578 F.3d 882, 885 (8th Cir. 2009)). Further, measures taken to relieve pain and failure to comply with treatment are important factors considered under 20 C.F.R. § 404.1529(c)(3). The ALJ noted, that

the December 21, 2016 treatment notes indicated plaintiff was anxious and depressed, but on December 29, 2016 when plaintiff again reported overwhelming anxiety and panic when leaving home, plaintiff admitted she had stopped taking her Ambien for two weeks. (Tr. 19.) Finally, the ALJ noted that at the follow-up in March 2017, plaintiff reported that her depression, anxiety, and severe agoraphobia were better, although she still had challenges falling asleep. (*Id*.)

Defendant argues the treatment records do not support plaintiff's argument and that Nurse Practitioner Browning's report does not reflect plaintiff's limits during the relevant period. The ALJ gave limited weight to Nurse Browning's opinion that plaintiff has such serious agoraphobia that she "cannot leave home or go in public places," because it was inconsistent with the record and the plaintiff's own testimony. (Tr. 20, 808.) However, the ALJ acknowledged that additional evidence after the date plaintiff was last insured suggests increasing symptomology but explained that such evidence could not support additional restrictions during the relevant period.

In addition, the ALJ discussed the weight he gave to the opinion of Marc Maddox, PhD, who opined that plaintiff was moderately impaired, which was consistent with the record, and the opinion of Sherief Garrana, MD, that plaintiff could perform light exertional work, also consistent with the record. (Tr. 20.) The ALJ noted Dr. Maddox recommended plaintiff be limited to simple routine tasks to avoid exacerbating plaintiff's depression and anxiety. (*Id*.) Accordingly, the plaintiff's claim that the ALJ did not consider the scope of her anxiety with agoraphobia or related limits is not consistent with the ALJ's three-page discussion of plaintiff's mental limitations, consistent with the medical record and opinions of Dr. Maddox and Dr. Garrana. (Tr. 18-21.) Accordingly, the ALJ's RFC determination is supported by substantial evidence in the record.

### B.     Characterizing Evidence and Credibility

Plaintiff argues the ALJ mischaracterized evidence and her testimony. She argues, the ALJ failed to properly consider the limitations of her agoraphobia when he determined she had only "moderate limitations" interacting with others. (Doc. 17 at 11.) The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of her limitations. *Baldwin*, 349 F.3d at 556. In this case, after careful consideration of all the evidence, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.

However, plaintiff's statements concerning the limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17.)

Generally, courts defer to the ALJ's evaluation of credibility provided that the determination is supported by "good reasons and substantial evidence." *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014); 20 C.F.R. § 404.1529; SSR 16-3p. The ALJ must make express credibility determinations and set forth inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir. 2004). The evaluation of a plaintiff's subjective complaints is not an examination of an individual's character. SSR 16-3p. Instead, the ALJ should consider all evidence in the record and incorporate the factors to be considered under the regulations. 20 C.F.R. § 404.1529(c)(3). These factors include plaintiff's daily activities; the location, duration, frequency, and intensity of pain; the medication used to alleviate symptoms; any other treatment for pain; any other measures taken by the claimant to relieve symptoms; and failure to comply with treatment. *Id.* The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Masterson,* 363 F.3d at 738. In this case, the ALJ gave good reasons for his findings.

To the extent plaintiff argues that the ALJ failed to consider Nurse Practitioner Browning's 2018 letter that stated plaintiff had "agoraphobia that was so severe she could not leave the home or go out in public places" (Tr. 808), the ALJ noted possible increasing symptomology but found it could not support additional restrictions in the RFC for the purpose of determining disability during the relevant period. (Tr. 20.) The treatment notes and medical letters generated in 2017, 2018, and 2018 reflect the plaintiff's possible limitations substantially after the date she was last insured. Further, the ALJ lawfully gave limited weight to Nurse Practitioner Browning's statements about the effect of plaintiff's agoraphobia and that plaintiff would likely miss work 25% of the time (Tr. 808), because they were inconsistent with the relevant medical evidence and plaintiff's report to her treating providers that she "quit work to take care of her first grandchild" (Tr. 62). (Tr. 20, 62.) Similarly, in *Eichelberger v. Barnhart*, the ALJ considered that claimant ceased employment at the same time she became the primary care giver to her grandchild, which weighed against that claimant's credibility. 390 F.3d 584, 590 (8th Cir. 2004). That court noted it would not substitute its opinion for that of the ALJ who is in a better position to assess credibility. (*Id*.) Here, plaintiff reported she quit work and watched her grandchildren every day. (Tr. 19, 62.) In other medical records she described herself as a "homemaker" or "retired" which supports the

ALJ's finding that she left work for other than medical reasons. (Tr. 19, 234, 794, 796, 798.) The Court may not substitute its opinion for that of the ALJ.

Plaintiff further contends that ALJ considered her activities, including: grocery shopping, going to restaurants, going to her daughter's house four to five times per week, driving into town, taking care of her grandchildren, and attending the state fair; but not that she did these activities with the help of others. (Doc. 17 at 9-10.) Plaintiff's testimony that her panic attacks occurred daily is inconsistent with previously discussed treatment notes in the record. (Tr. 57.) Further, the ALJ noted being sympathetic to the plaintiff's depression and anxiety with agoraphobia, specifically mentioning and considering agoraphobia in the opinion. However, the ALJ also noted that plaintiff's daily activities supported a finding that plaintiff was not precluded from all work; and that plaintiff's living with her daughter and three grandchildren, her husband, and her daughter's boyfriend suggested "some ability to get along with others." (Tr. 20.) Despite this finding, the ALJ appropriately recognized that plaintiff's mental impairments were limiting. Finally, the ALJ considered plaintiff's daughter's testimony regarding the severity of plaintiff's impairments and her ability to function; he noted that this testimony supported limitations on plaintiff's daily activities. (Tr. 21.)

The ALJ considered all evidence, acknowledged the appropriate factors, and gave good reasons for his findings. Substantial evidence supports his determinations regarding the limiting effects of plaintiff's mental impairments.

### C. Accommodation for Limits

Plaintiff argues that ALJ did not properly consider her agoraphobia when he determined she was only moderately impaired when interacting with others. When a claimant suffers from a mental impairment the ALJ must analyze mental capacity including the ability to understand, carry out and remember simple instructions, and to respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 404.1545(c); *see also* Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. Plaintiff testified that she did not have trouble interacting with others in a small office with six employees when she was employed by the Department of Corrections. (Tr. 66.) Yet, the ALJ determined that evidence supported a reduction of plaintiff's ability to function mentally and limited her to performing simple and routine tasks throughout the workday

in an occupation not requiring her to communicate with the public on behalf of her employer. (Tr. 16, 19, 22.) Therefore, plaintiff's argument is without merit.

### **Plaintiff's Ability to Perform Other Work**

After determining the RFC at Step 4, the ALJ found that plaintiff was not able to perform her past relevant work and the burden shifted to the Commissioner, at Step 5, to indicate evidence of other work existing in significant numbers in the national economy that plaintiff could perform, based on her age, education, work experience, and RFC. 20 C.F.R. § 404.1520(g). Plaintiff argues the ALJ erred by failing to consider that her agoraphobia left her completely unable to leave the house, limiting her ability to perform any work. (Doc. 17 at 11-12.)

The ALJ may include only those limitations he finds were supported by the record as a whole, when submitting a hypothetical question to a vocational expert during the hearing. *Haggard v. Apfel*, 175 F.3d 591, 595, (8th Cir.1999) (holding an ALJ need not include additional complaints in the hypothetical not supported by substantial medical evidence). In the instant case, a VE testified that plaintiff could perform light and unskilled jobs of cleaner-housekeeper, router, and marker. (Tr. 22, 71-73.)

Plaintiff's argument is factually inconsistent with her own testimony that she shops and goes to restaurants; she was not "completely unable to leave the house" during the relevant period (Tr. 19.) Further, plaintiff argues that she had significant difficulties "some days" leaving the home without another person (Doc. 17 at 12) and that the vocational expert testified that absence on a weekly basis would preclude performing unskilled occupations in the national economy. (Tr. 73.) However, no substantial medical evidence in the record indicates that plaintiff required absence from work on a weekly basis. The ALJ's hypothetical question to the VE appropriately included only those impairments that the ALJ found were supported by credible medical evidence. Thus, the vocational expert's testimony was substantial evidence that supported the ALJ's determination.

Because plaintiff retained the RFC to perform other work, she was not disabled as defined in the Social Security Act at any time through the date she was last insured. Substantial evidence on the record as a whole supports the ALJ's Step 5 determination.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

      **/s/   David D. Noce**           
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 2, 2020.